UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
EVANSVILLE  DIVISION


| | |
|---|---|
| WABASH VALLEY FEED AND GRAIN, LLC,       Plaintiff, <br><br> vs. <br><br> LAWRENCE HUST, d/b/a L. HUST FARMS, L. HUST FARMS, and HUST CATTLE COMPANY, <br><br> ALLAN HAVICK, d/b/a RAFTER H. RANCH, <br><br> JOSH LANCASTER,       Defendants. | ) ) ) ) ) ) ) ) ) ) ) ) )      3:11-cv-00014-SEB-WGH |


**ORDER DENYING DEFENDANTS' MOTION TO DISMISS AND DENYING
DEFENDANTS' MOTION TO TRANSFER VENUE**

This cause is before the Court on the Motion of Defendant, Lawrence Hust, d/b/a/

L. Hust Farms, L. Hust Farms, and Hust Cattle Company's ("Hust Farms"), to Dismiss or,

in the Alternative, Motion to Transfer Venue (the "Motion") [Docket No. 17], filed

March 17, 2011, pursuant to 28 U.S.C. § 1404(a).[1]  Hust Farms moves to dismiss this

action pursuant to Federal Rules of Civil Procedure 12(b)(2) and 12(b)(3).  In the

alternative, Hust Farms alleges that venue is improper in the Southern District of Indiana

and requests that this Court transfer the action to the U.S. District Court for the Western

District of Kentucky for the convenience of the parties and witnesses, and in the interest

---

[1] The Motion was filed solely by Defendant Hust Farms.

of justice.  Plaintiff, Wabash Valley Feed and Grain, LLC ("Wabash Valley"), responds that personal jurisdiction over Hust Farms may be exercised here and that venue is also proper in the Southern District of Indiana.  Further, Wabash Valley maintains that Hust Farms has not met its burden to establish the need for transfer and that Indiana has a strong interest in retaining jurisdiction over this action.  For the reasons detailed in this entry, we DENY Defendants' Motion to Dismiss and DENY Defendants' Motion to Transfer Venue.

## **Factual Background**

This case arises out of a contractual relationship between Wabash Valley and Hust Farms.  Wabash Valley is a limited liability company organized and existing under Indiana law, with its principal place of business in Evansville, Indiana.  Compl. ¶ 1.  Hust Farms, a private Kentucky business, is "a conglomerate of many farms located in Webster, Henderson, Hopkins, and McLean Counties with a primary focus of growing [c]orn, [s]oybeans, and [g]rain [s]orghum."[2]  Defendant Lawrence Hust, who operates Hust Farms, is a citizen of the Commonwealth of Kentucky.  *Id.* ¶ 2.  Defendant Josh Lancaster ("Lancaster"), an agent of Hust Farms, is a resident of the Commonwealth of Kentucky.  *Id.* ¶¶ 48, 5.  Defendant Allan Havick, d/b/a Rafter H. Ranch ("Havick"), is a resident of the State of Iowa.  *Id.* ¶ 4.  Because this is a civil action between citizens of different states with an amount in controversy above  $75,000, subject matter jurisdiction over the action is founded on diversity.  28 U.S.C. § 1391(a)(1).

---

[2]L. HUST FARMS, http://hstrial-lhustfarms.homestead.com/ (last visited Aug. 10, 2011).

On February 4, 2010, Wabash Valley and Hust Farms entered into an agreement wherein Wabash Valley agreed to purchase an entire herd of cattle from Hust Farms for a sale price of $425,000.  Compl. ¶ 9.  Pursuant to this agreement, all cattle were to be delivered in merchantable condition and free of communicable disease.  Compl. Ex. A at 1.  Any deformed or otherwise nonconforming cattle could be rejected at Wabash Valley's option, with the sale price adjusted accordingly.  *Id.*  By its terms, the agreement included as part of the sale "the storage vessel and all frozen embryos [sic] and bull semen contained within."  *Id.* at 11.  The parties executed an addendum to the cattle purchase agreement on March 1, 2010 to note, *inter alia*, that all cattle were located in Slaughters, Kentucky[3] and that the sale included hay and grain.  Compl. ¶ 10; Compl. Ex. B. at 1.  Both the cattle purchase agreement and its addendum referenced an inventory list setting forth the names and registration numbers of all cattle included in the sale.  Compl. ¶ 16-17; Compl. Ex. F. at 1.

On February 4, 2010, the parties also entered into a farmland lease wherein Wabash Valley agreed to lease certain land located in Webster County, Kentucky and certain equipment and structures thereon from Hust Farms in monthly installments of $5000.  Compl. ¶ 11.  The lease granted Wabash Valley exclusive use of "[a]ll buildings and structures on the leased land," except for one house trailer.  *Id.*; Compl. Ex. C. at 1.  On March 18, 2010, the parties executed an addendum to the lease memorializing Hust Farms's intent to plant approximately 175 acres of row crops on the leased farmland.

---

[3]Slaughters is a city within Webster County, Kentucky.

Compl. ¶ 12.  The lease addendum also allocated crop inputs between the parties and made Wabash Valley responsible for reestablishing pastures when any of these 175 acres ceased to be used for production grain crops.  *Id.*; Compl. Ex. D. at 1.  That same month, the parties verbally modified[4] this addendum to reduce row crop acreage, alter crop input allocation, abolish Wabash Valley's duty to reestablish pastures, and adjust the rental rate of the lease.  Compl. ¶ 13.  The parties modified the lease once more, on March 18, 2010, by written addendum.  *Id.* ¶ 14.  Under the second lease addendum, Hust Farms agreed to lend Wabash Valley "the use of all portable and stationary cattle working equipment" on the leased farmland; in return, Wabash Valley permitted Hust Farms to store equipment in buildings located on the leased farmland.  *Id.*

Pursuant to the cattle purchase agreement and its associated inventory list, Wabash Valley's purchase was to include a mature herd sire identified as Hust Chief Sequoya R366 ("Chief Sequoya").  Compl. ¶ 17; Compl. Ex. F at 12.  Wabash Valley claims that the agreement conferred upon it a 47% possessory interest in Chief Sequoya.[5] Nevertheless, on February 23, 2010, Hust Farms sold Chief Sequoya to Havick in Havick's capacity as agent for Rafter H. Ranch.  Compl. ¶ 18; Compl. Ex. G at 1.  Havick paid $4000 in exchange for full possession of Chief Sequoya and a 46% semen interest in the sire.  Compl. Ex. G at 1.  Wabash Valley now alleges that this sale by Hust Farms was

---

[4]In Count II of its Complaint, Wabash Valley takes issue with Hust Farms's failure to document the oral modifications in writing.  Compl. ¶ 43.

[5]We are unable to discern the origin of this number; there is no discussion of percent possessory interests in the cattle purchase agreement or its addendum.  However, Hust Farms does not dispute this assertion.  Thus, to the extent that this information is relevant, we accept it as true.

a breach of the cattle purchase agreement.  Compl. ¶ 19.

Another mature herd sire included in Wabash Valley's purchase was Hust Hay Day T509 ("Hay Day").[6]  Compl. ¶ 21; Compl. Ex. F at 12.  At some point before the parties executed the cattle purchase agreement, Hay Day sustained an injury that rendered him unable to sire calves except by synthetic means.  Compl. ¶ 21.  Wabash Valley was not aware of Hay Day's condition before the sale but soon realized it had acquired an animal whose value was "markedly decreased because of his condition."  *Id.* ¶ 22.  Specifically, Wabash Valley incurred extra costs to artificially harvest this sire.  *Id.*  No post-sale adjustment was made to Hay Day's sale price.  *Id.*  According to Wabash Valley, this situation represents a breach by Hust Farms of its duty to adjust sale price for "[c]attle that are . . . crippled . . . or otherwise deformed."  *Id.* ¶ 23; Compl. Ex. A at 1.

Wabash Valley also states that Hust Farms breached its duties involving registration of the cattle involved in the sale.  Compl. ¶¶ 28-30.  Notably, Wabash Valley claims that Hust Farms failed to: (1) transfer registration of all cattle to Wabash Valley; (2) update the breeding information of all cattle; and (3) register all cattle with the Red Angus Association of America.  *Id.* ¶ 29.  In Wabash Valley's view, these alleged failures in effecting the transaction impaired its confidence in the lineage of the herd.  *Id.* ¶ 30.

Wabash Valley also asserts several breaches by Hust Farms with respect to the farmland lease.  Despite the lease's provision granting Wabash Valley exclusive use of all buildings and structures on the farmland, Wabash Valley contends that Hust Farms rented

---

[6]Although the inventory sheet lists this sire as "HUS" Hay Day T509, we leave it as "Hust" for the purpose of consistency.

a farmhouse to tenants and prevented Wabash Valley from using pieces of cattle working equipment. *Id.* ¶¶ 35-36, 40-41. Wabash Valley also alleges that Hust Farms allowed persons other than Hust Farms employees to occupy the house trailer in contravention of the lease. *Id.* ¶ 36; Compl. Ex. C at 1. Finally, Wabash Valley claims that Hust Farms failed to provide weight tickets for certain harvested crops and never reduced Wabash Valley's monthly rent after the agreement to harvest row crops. Compl. ¶¶ 44-45.

On January 21, 2011, Wabash Valley filed its Original Complaint ("Complaint") against Hust Farms with this Court.[7] Wabash Valley brings several causes of action against Hust Farms: breach of the cattle purchase agreement and its addendum, breach of the farmland lease and its addenda, fraud, conversion, and trespass.

## Legal Analysis

Hust Farms's Motion is twofold: first, it asks the Court to dismiss Wabash Valley's Complaint either for lack of personal jurisdiction under Rule 12(b)(2) of the Federal Rules of Civil Procedure or for improper venue under Rule 12(b)(3). Second, in the alternative, the Motion requests transfer of this action to the Western District of Kentucky. We necessarily address our ability to exercise personal jurisdiction over Hust Farms before considering whether it is appropriate for us to retain jurisdiction over the action.

## I. Motion to Dismiss for Lack of Personal Jurisdiction or Improper Venue

---

[7]We note that in a judgment dated January 25, 2011, Hust Farms obtained a writ of forcible detainer against Wabash Valley in the Webster District Court, Commonwealth of Kentucky.

## A.  Personal Jurisdiction

### 1.  Standard of Review

Federal Rule of Civil Procedure 12(b)(2) requires dismissal of a claim where

personal jurisdiction is found to be lacking.  After the defendant moves to dismiss a claim

under Rule 12(b)(2), "the plaintiff bears the burden of demonstrating the existence of

jurisdiction." *Purdue Research Found. v. Sanofi-Synthelabo, S.A.*, 338 F.3d 773, 782 (7th

Cir. 2003).  The plaintiff is required to "make out a prima facie case of personal

jurisdiction" and is entitled to have any conflicts in affidavits or supporting materials

resolved in its favor.  *Id.* at 782-83 (citation omitted).

A district court must undertake and satisfy a two-step analysis in order to properly

exercise personal jurisdiction over a non-resident defendant.  First, the exercise of

personal jurisdiction over the defendant must comport with the state's long-arm statute;

second, such exercise must comport with the Due Process Clause of the Constitution.  *Id.*

at 779.  Because Indiana's long-arm statute, Indiana Rule of Trial Procedure 4.4(a),

"reduce[s] analysis of personal jurisdiction to the issue of whether the exercise of

personal jurisdiction is consistent with the [f]ederal Due Process Clause," we limit our

inquiry to the second step of the analysis.  *LinkAm. Corp. v. Albert*, 857 N.E.2d 961, 967

(Ind. 2006).  Due process requires that the defendant have "certain minimum contacts

with it such that the maintenance of the suit does not offend 'traditional notions of fair

play and substantial justice.'" *Mobile Anesthesiologists Chi., LLC v. Anesthesia Assocs. of

Hous. Metroplex, P.A.*, 623 F.3d 440, 443 (quoting *Int'l Shoe Co. v. Washington*, 326

U.S. 310, 316 (1945)).  These minimum contacts "must have a basis in 'some act by

which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws.'" *Asahi Metal Indus. Co. v. Super. Ct. of Cal.*, 480 U.S. 102, 109 (1987) (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985)).  Such purposeful availment is required to ensure that defendants may reasonably anticipate what conduct will subject them to the jurisdiction of a foreign sovereign.  *Burger King*, 471 U.S. at 472.

Personal jurisdiction may be either specific or general.  A court may exercise specific jurisdiction over a defendant if the case or controversy "arises out of" the defendant's contacts with the forum state, creating a "relationship among the defendant, the forum, and the litigation."  *Helicopteros Nacionales de Colom., S.A. v. Hall*, 466 U.S. 408, 414 (1984) (citations omitted).  By contrast, general jurisdiction is proper if the defendant has "continuous and systematic" contacts with the forum state.  *Hyatt Int'l Corp. v. Coco*, 302 F.3d 707, 713 (7th Cir. 2002).  Where such contacts exist, the court has jurisdiction over the defendant regardless of the subject matter of the action.  *Id.* General jurisdiction employs a more stringent standard to ensure fundamental fairness. Thus, the "continuous and systematic" contacts a defendant must have with a forum state "must be so extensive to be tantamount to [the defendant] being constructively present in the state" such that *any* litigation involving the defendant could justly be conducted in the forum state.  *Purdue Research Found.*, 338 F.3d at 787.

## 2.  Discussion

For this court to exercise personal jurisdiction over Hust Farms, Wabash Valley must show that Hust Farms has sufficient minimum contacts with the State of Indiana for

either general or specific jurisdiction.  Wabash Valley asserts that general jurisdiction

exists over Hust Farms based on the fact that Hust Farms "solicited Wabash Valley" for a

cattle herd sale for a period of five years.  Pl.'s Br. at 8.  During these five years,

according to Wabash Valley, Hust Farms made several telephone calls to Wabash Valley

members and traveled to Indiana to negotiate the sale.  *Id.*  Wabash Valley corroborates

this allegation by the affidavit of Lawrence Rasche ("Rasche"), one of its members.  Pl.'s

Br. Ex. A at 1.  Rasche's affidavit sets forth no specific facts beyond indicating generally

that he: (1) "had a business relationship with [Hust Farms] for approximately five (5)

years"; (2) had been solicited by a certain Larry Peters ("Peters") on Hust Farms's behalf;

and (3) had experienced "several contacts [with Hust Farms]. . . in the State of Indiana

both by telephone and by in-person visits."  *Id.* at 2.

   Several factors are typically weighed when determining whether a district court

may exercise general jurisdiction over a defendant, including the following:

> (1) whether and to what extent the defendant conducts business in the forum state;
> (2) whether the defendant maintains an office or employees within the forum state;
> (3) whether the defendant sends agents into the forum state to conduct business;
> (4) whether the defendant advertises or solicits business in the forum state; and
> (5) whether the defendant has designated an agent for service of process in the forum state.

*McManaway v. KBR, Inc.*, 695 F. Supp. 2d 883, 894 (S.D. Ind. Feb. 25, 2010).  Wabash

Valley contends that Hust Farms has satisfied this standard by "deliberately sending its

agent to Indiana in order to facilitate the sale of its herd of cattle to Wabash Valley."  Pl.'s

Br. at 8.  Hust Farms counters that the Complaint does not establish that it has paid any

taxes, owned any property, conducted any business, or established any of its entities in

Indiana, making it improper for this Court to exercise general jurisdiction over Hust

Farms.  Def.'s Br. at 8.

Our review of these factors as applied to the evidence of record leads us to

conclude that we lack general jurisdiction over Hust Farms.  The limited information

given us regarding Hust Farms establishes that it is a modest row crop operation spanning

no more than three counties in Kentucky.  No business entity records are available for any

of its alternative names in the Commonwealth of Kentucky or the State of Indiana, which

suggests that it is a sole proprietorship or partnership.  Whatever the case may be, it is

clear that Hust Farms does not maintain employees in Indiana in any capacity.  The

company website provides a post office box for prospective customers to contact Hust

Farms, as well as cellular telephone numbers and email addresses for Lancaster and

Lawrence Hust.  This website also provides pictures of fewer than ten pieces of farm

equipment, without listed prices, that are for sale.  In our view, such sparse facts as these

do not establish a continuous, systematic business presence in the State of Indiana.  What

limited argument Wabash Valley advances to support general jurisdiction focuses upon

Hust Farms's (or its agent's) contacts with Indiana, and we are mindful of the Seventh

Circuit's direction that general jurisdiction "is for suits neither arising out of nor related to

the defendant's contacts."  *RAR, Inc. v. Turner Diesel, Ltd.*, 107 F.3d 1272, 1277 (7th Cir.

1997); *see also Wilson v. Humphreys (Cayman) Ltd.*, 916 F.2d 1239, 1244 (7th Cir. 1990)

(describing the general jurisdiction analysis as one of "the defendant's overall activity in

the state, not simply its actions with respect to the underlying transaction").  We therefore

decline to exercise general jurisdiction over Hust Farms and move next to consider

whether specific personal jurisdiction can be properly exercised over this defendant.

Hust Farms looks mainly to *Citadel Group Ltd. v. Washington Regional Medical Center*, 536 F.3d 757, 763 (7th Cir. 2008), to support its assertion that this court lacks specific jurisdiction over its contractual arrangement with Wabash Valley.  Def.'s Br. at 8.  We have no disagreement with the Seventh Circuit's stance in *Citadel Group* that "the formation of the contract alone is not sufficient to confer personal jurisdiction."  *Citadel Grp.*, 536 F.3d at 763.  However, "with respect to interstate contractual obligations . . . parties who 'reach out beyond one state and create continuing relationships and obligations with citizens of another state' are subject to regulation and sanctions in the other [s]tate for the consequences of their activities."  *Burger King*, 471 U.S. at 473 (quoting *Travelers Health Ass'n v. Virginia*, 339 U.S. 643, 647 (1950)).  More importantly, we note that specific personal jurisdiction is to be analyzed on a fact-specific, case-by-case basis.  *Am. Commercial Lines, LLC v. Ne. Maritime Inst., Inc.*, 58 F. Supp. 2d 935, 942 (S.D. Ind. 2008) (citing *Brockman v. Kravic*, 779 N.E.2d 1250, 1256 (Ind. Ct. App. 2002)).  We examine several factors when determining the foreseeability to the defendant of being haled into court in the Southern District of Indiana, including:

> (1) [t]he nature and quality of the contacts with the forum state; (2) the quantity of contacts [sic] with the state; (3) the relationship between those contacts and the cause of action; (4) the interest of the forum state in providing a forum for its residents; and (5) the convenience of the parties.

*Harris v. Ford Motor Co.*, No. IP 85-1826-C, 1987 WL 54371, at *3 (S.D. Ind. May 1, 1987) (quoting *Int'l Steel Co. v. Charter Builders, Inc.*, 585 F. Supp. 816, 821 (S.D. Ind. 1984)).

In considering the above factors, we note Hust Farms's statement that "there is no allegation of any conduct or connection with Indiana whereby [it] should have reasonably anticipated being haled into court there." Def.'s Br. at 9. This assertion directly follows Hust Farms's request that we discredit Wabash Valley's allegation in its Complaint that "soliciting and ultimately contracting with an Indiana limited liability company" constituted purposeful availment of the privileges of conducting business in the State of Indiana. *Id.*; Compl. ¶ 8. In fact, the parties present contradictory affidavits regarding such alleged solicitation and contacts. Wabash Valley's affidavit, mentioned above as the statement of Rasche, accompanies Plaintiff's Response Brief in Opposition to the Motion. Pl.'s Br. Ex. A at 1. As previously described, this affidavit describes a five-year business relationship between Hust Farms and Rasche, a member of Wabash Valley.[8] Rasche avers that during those five years, he was "solicited by Hust by and through his agents and/or employees, namely Larry Peters" via telephone and visits that took place in Spencer County, Indiana. *Id.* at 2.

Hust Farms's affidavit is second in time; it accompanies the Reply Brief in Support of the Motion. Reply Br. Ex. A at 1. This affidavit is the statement of Lawrence Hust, who avers that "Hust Farms does not do business in Indiana." *Id.* Mr. Hust admits that Peters was a Hust Farms employee from approximately August 2008 to December 2009, when he allegedly began working for Wabash Valley. *Id.* at 2-3. He claims no

---

[8]Under the Indiana Business Flexibility Act, each member of an Indiana limited liability company is an agent of the company and may conduct business in the company's name unless the operating agreement provides otherwise. IND. CODE § 23-18-3-1.1. Without viewing Wabash Valley's operating agreement, we assume that Rasche was authorized to conduct business on behalf of the company.

knowledge of any contact between Peters and Rasche during Peters's employment with
Hust Farms. *Id.* at 2. However, he states that Peters submitted no receipts for travel to
the State of Indiana or to visit Rasche. *Id.* It is Mr. Hust's position that Rasche, not
anyone from Hust Farms, initiated all communications regarding the cattle purchase
agreement, which included telephone calls and "several in-person visits to . . . Webster
County, Kentucky." *Id.* Additionally, Mr. Hust alleges that the cattle purchase
agreement, the farmland lease, and all addenda were executed in Kentucky. *Id.* at 2-3.

In resolving these contradictory affidavits, we note that when deciding a Rule
12(b)(2) motion to dismiss, "all well-pleaded jurisdictional allegations in the complaint
are accepted as true unless controverted by affidavit." *Travelers Cas. & Sur. Co. v.
Interclaim (Bermuda) Ltd.*, 304 F. Supp. 2d 1018, 1021 (N.D. Ill. 2004). The court
"reviews any affidavits and other documentary evidence that have been filed, as long as
factual disputes are resolved in favor of the non-movant"–in this case, Wabash Valley.
*Noble Romans, Inc. v. French Baguette, LLC*, 684 F. Supp. 2d 1065, 1069 (S.D. Ind.
2010). Wabash Valley "need only make out a prima facie case of personal jurisdiction."
*Purdue Research Found.*, 338 F.3d at 782 (citation omitted). The court does not act as a
factfinder when determining whether the plaintiff has met this standard; "rather, it accepts
properly supported proffers of evidence by a plaintiff as true and makes its ruling as a
matter of law." *Id.* at 783 n.14 (quoting *United States v. Swiss Am. Bank*, 274 F.3d 610,
619 (1st Cir. 2001)).

Having reviewed the affidavits, and being mindful of the appropriate legal
standards, we are satisfied that specific personal jurisdiction over Hust Farms exists here.

We accept as true Wabash Valley's evidence that Hust Farm employees, including Peters, solicited one of its members for business purposes–notably, the cattle purchase agreement.  Importantly, we also accept as true that Peters made more than one business visit to Rasche's farm, which would necessarily have alerted Peters that he was conducting business in the State of Indiana.  By reaching out to Wabash Valley on the phone and in person over the course of five years, Hust Farms forged a continuing relationship with an Indiana entity.  We find that such activity constitutes purposeful availment of the laws and privileges of doing business in this state.  The Supreme Court has established that parties who reach beyond state lines in this manner "are subject to regulation and sanctions in the other State for the consequences of their activities." *Burger King*, 471 U.S. at 472.  A reasonable person in Mr. Hust's position would be fully aware that his actions here (and the actions of his agents and employees) would affect a business situated in Indiana.  Therefore, the Court concludes that Hust Farms should reasonably have anticipated being haled into court in Indiana for lawsuits involving Wabash Valley.

Because we conclude that Hust Farms has sufficient minimum contacts with Indiana, we next consider whether Hust Farms has made a compelling case that litigating this case in Indiana would violate traditional notions of fair play and substantial justice. *See Burger King*, 471 U.S. at 576.  Hust Farms has failed to submit evidence to establish this point and opines merely that "Kentucky, and its courts, has a greater relationship to this litigation."  Def.'s Br. at 13.  We recognize that defending a lawsuit out of one's home state is always slightly burdensome, but we believe it is not oppressive in this case.

Even when parties do not enjoy the convenience of residing in adjoining states, as they do here, "[e]asy air transportation, the rapid transmission of documents, and the abundance of law firms with nationwide practices make it easy these days for cases to be litigated with little extra burden." *Bd. of Trs., Sheet Metal Workers' Nat'l Pension Fund v. Elite Erectors, Inc.*, 212 F.3d 1031, 1037 (7th Cir. 2000).

Hust Farms will not be unduly burdened by defending this lawsuit in Indiana. Moreover, as an Indiana limited liability company, Wabash Valley has an interest in obtaining convenient relief in this state. *See Burger King*, 471 U.S. at 482-83. Due to Hust Farms's deliberate, ongoing contacts with this forum and the lack of prejudice to Hust Farms in appearing here, we find that an exercise of personal jurisdiction over Hust Farms in this action is entirely proper.

## B. Venue

In addition to the Motion to Dismiss for lack of personal jurisdiction, Hust Farms requests dismissal based on its claim of improper venue, pursuant to Federal Rule of Civil Procedure 12(b)(3). Title 28, Section 1406(a) of the United States Code provides that when a case is filed in an improper district, the district court shall dismiss or, if justice so requires, transfer the case to a district where venue is proper. Venue in a diversity action is proper only in –

> (1) a judicial district where any defendant resides, if all defendants reside in the same State, (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated, or (3) a judicial district in which any defendant may be found, if there is no district in which the action may otherwise be brought.

28 U.S.C. § 1391(a). As the parties here reside in different states, § 1391(a)(1) is

inapplicable.  Nevertheless, venue over Hust Farms is proper in Indiana under §

1391(a)(3) because, as discussed above, this Court has personal jurisdiction over Hust

Farms.  Seventh Circuit law provides that a defendant "may be found" in a judicial

district if it has the type of "minimum contacts" with that district that permit the exercise

of personal jurisdiction under *International Shoe Co. v. Washington*, 326 U.S. 310 (1945).

*Waeltz v. Delta Pilots Retirement Plan*, 301 F.3d 804, 810 (7th Cir. 2002).

For the reasons stated above, we find that this court is empowered to exercise

personal jurisdiction over Hust Farms in this action.  Accordingly, venue is proper in the

Southern District of Indiana, and Hust Farms's Motion to Dismiss for lack of personal

jurisdiction or improper venue is DENIED.

## II.  Motion to Transfer Venue

Hust Farms's final request is that Wabash Valley's claims against it be transferred,

pursuant to 28 U.S.C. § 1404(a), given that Wabash Valley's forum choice does not best

achieve the goal of convenience of the parties.  Hust Farms argues that the proper place

for trial of all claims against it is in the Western District of Kentucky–the location of Hust

Farms, certain witnesses, and farm products involved in the transactions.

The federal venue statute is designed "to prevent the waste 'of time, energy and

money' and 'to protect litigants, witnesses and the public against unnecessary

inconvenience and expense.'"  *Van Dusen v. Barrack*, 376 U.S. 612, 616 (1964) (quoting

*Cont'l Grain Co. v. Barge F.B.L.-585*, 364 U.S. 19, 26, 27 (1960)); *Heckler & Koch, Inc.*

*v. Precision Airsoft, LLC*, No. 1:09-cv-485-SEB-JMS, 2010 WL 1257450, at *1 (S.D.

Ind. Mar. 25, 2010).  Notably, § 1404(a) provides that, "for the convenience of parties

and witnesses and in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought."  Transfer is appropriate under this statute in cases where "the moving party establishes that (1) venue is proper in the transferor district, (2) venue and jurisdiction are proper in the transferee district, and (3) the transfer will serve the convenience of the parties, the convenience of the witnesses, and the interest of justice."  *State Farm Mut. Auto. Ins. Co. v. Estate of Bussell*, 939 F. Supp. 646, 651 (S.D. Ind. 1996).  A district court has discretion to adjudicate motions for transfer of venue on a case-by-case basis.  *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988).

Having determined that venue is proper for adjudication of this action in Indiana, the issues before us are:  (1) whether venue and jurisdiction are proper in Kentucky, and (2) whether a transfer of venue would be convenient and in the interest of justice under § 1404(a).  We may dispose of the first issue briefly.  Venue is proper in Western Kentucky under 28 U.S.C. § 1391(a)(2) because "a substantial part of the events or omissions giving rise to the tort claim"–whether breach of contract or alleged tortious conduct–occurred in this district.  Further, Western Kentucky may exercise personal jurisdiction over all defendants in this action.  With respect to Lawrence Hust, Hust Farms, and Lancaster, jurisdiction is proper in Kentucky because these defendants are Kentucky residents.  Havick, as stated above, is a resident of Iowa.  However, we find that in purchasing Chief Sequoya from Hust Farms, he purposefully availed himself of the privileges of conducting business in Kentucky.  Seeing no evidence that forcing him to appear in Kentucky would offend traditional notions of fair play and substantial justice,

we find that Kentucky may exercise personal jurisdiction over Havick as well.

Next, we address whether a transfer of venue comports with the overarching policy objectives of § 1404(a).  Under the Seventh Circuit's well-established guidelines regarding transfer of venue, Hust Farms carries a weighty burden.  It must prove that the Western District of Kentucky is not just *more* convenient, but "*clearly* more convenient" than the Southern District of Indiana.  *Coffey v. Van Dorn Iron Works*, 796 F.2d 217, 220 (7th Cir. 1986) (emphasis added).  As mentioned above, when making this determination, we consider the convenience of the parties, the convenience of the witnesses, and the interest of justice in light of all circumstances in the case.  We conclude that the balance of the relevant factors does not support transferring the case at bar to the Western District of Kentucky.

## A.  Convenience of the Parties

We begin our analysis by acknowledging Wabash Valley's choice to litigate its claim in the Southern District of Indiana.  Traditionally, district courts afford a plaintiff's choice of forum substantial deference.  *Butterick Co. v. Will*, 316 F.2d 111, 112 (7th Cir. 1963); *Hunter v. Big Rock Transp., Inc.*, No. 1:07-cv-1062-SEB-TAB, 2008 WL 1957775, at *2 (S.D. Ind. May 2, 2008).  "[U]nless the balance is strongly in favor of the defendant, the plaintiff's choice of forum should rarely be disturbed."  *In re Nat'l Presto Indus., Inc.*, 347 F.3d 662, 664 (7th Cir. 2003) (quoting *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508 (1947)).  The Seventh Circuit has stated that this factor has "minimal value where none of the conduct . . . occurred in the forum selected by the plaintiff."  *Chi., R.I. & P.R. Co. v. Igoe*, 220 F.2d 299, 304 (7th Cir. 1955) (citation omitted).  This is not the

case in the present litigation, but we do not believe that Indiana is so intimately connected to the action that this factor should control.

Wabash Valley does not overtly dispute Hust Farms's assertion that Kentucky is more convenient to the parties.  However, it argues that this factor does not *clearly* weigh in favor of transferring venue to Kentucky.  Pl.'s Br. at 12.  The Western District of Kentucky is only marginally more convenient for Hust Farms than the Southern District of Indiana would be.  Courthouses for both districts are located approximately forty miles from Hust Farms,[9] and counsel for both parties are located in Evansville, Indiana. Although we agree with Hust Farms that litigation in Kentucky would pose no major hardship to Wabash Farms, we remind the litigants that "the effect of a transfer cannot be a mere shift of inconveniences among parties."  *Whitney v. Big Dog Holdings, Inc.*, No. 1:07-cv-1026-SEB-WTL, 2007 WL 3334503, at *3 (S.D. Ind. Nov. 7, 2007) (quoting *Moore v. AT&T Latin Am. Corp.*, 177 F. Supp. 2d 785, 879 (N.D. Ill. 2001)). Transferring this case to the Western District of Kentucky would likely shift the inconvenience, if any, from Hust Farms to Wabash Valley.[10]

Even though "[i]t is . . . not unusual that venue will be transferred to the district where defendant has its principal office," *Whitney*, 2007 WL 3334503, at *4, Hust Farms does not make this point in its brief.  Hust Farms does state that this case should be

_____

[9]This figure is accurate if we assume that litigation would take place in the Evansville Division of the Southern District of Indiana.

[10]Hust Farms correctly notes that Havick, the non-moving defendant, would not be any more inconvenienced by litigating in Western Kentucky than in Southern Indiana because he resides in Iowa.  Thus, his location does not tip the balance in our analysis.

transferred because the contested issues will involve sources of proof located in Kentucky, not Indiana, and thus, overall convenience would be served by a transfer of venue. Hust Farms also claims that these disputed "actions and/or omissions" all arise out of Kentucky–notably, the tort claims of trespass and conversion. Nevertheless, we cannot determine with certainty every issue that will be contested at this stage in the litigation. Furthermore, while it is true that the site of allegedly infringing activity should be considered, it is not determinative as a matter of law. If it were, a defendant would "almost always be allowed to transfer the case to its home forum." *Aearo Co. v. Bacou-Dalloz USA Safety, Inc.*, No. 1:03-cv-01406-DFH-VS, 2004 WL 1629566, at * 2 (S.D. Ind. July 21, 2004) (citation omitted).

Because Hust Farms has chosen to do business with entities in Southern Indiana, we do not regard it as unfair to expect Hust Farms to respond to litigation in that district. Taking all of these factors into consideration, the "convenience of the parties" factor is a "wash" between the parties. It therefore lends no support for a transfer to the Western District of Kentucky.

## B. Convenience of the Witnesses

Convenience of witnesses is often deemed "the most important factor in the transfer balance." *No Baloney Mktg., LLC v. Ryan*, No. 1:09-cv-0200-SEB-TAB, 2010 WL 1286720, at *10 (S.D. Ind. Mar. 26, 2010) (citation omitted). For purposes of § 1404(a), this factor is primarily concerned with the availability of non-party witnesses and evidence. *Aearo Co.*, 2004 WL 1629566, at *2. Our aim in assessing this factor is "to minimize the risk of 'trial by deposition.'" *Id.* (quoting *Volkswagen Aktiengesellschaft*

*v. Dee Eng'g, Inc.*, No. 1:02-cv-1669-LJM, 2003 WL 1089515, at *4 (S.D. Ind. Mar. 4, 2003)).

Here, Hust Farms offers a vague description of potential non-party witnesses in support of the Motion.  It identifies only "tenants" of the farmhouse and house trailer, as well as individuals who may have purchased hay and farm equipment from Hust Farms. Def.'s Br. at 12.  Without more identifying information for these individuals, we assume that they are closely affiliated with the side that will ask them to testify–Hust Farms. "Courts ordinarily can assume that the parties will be sufficiently motivated to have their . . . allies appear for trial wherever it might take place."  *Aearo Co.*, 2004 WL 1629566, at *3.  Even if this assumption proves false, we cannot determine at this point whether their locations favor one of the suggested venues over the other.  We are not convinced that Hust Farms has made a strong enough showing that convenience of its non-party witnesses is truly served by a transfer to Kentucky.

Wabash Valley is likely to present its own party witnesses, such as Rasche, who are Indiana residents.  Although it argues that "there are party and non-party witnesses alike that reside in Indiana and/or in other states," it also fails to specify critical non-party witnesses who may not be amenable to service in Indiana.  Pl.'s Br. at 13.  In short, the availability of non-party witnesses is a neutral factor in this case that does not favor a transfer of venue.

## C.  Interest of Justice

Finally, we consider whether a transfer of venue would be in the interest of justice. This component of a § 1404(a) transfer analysis is often determinative, even if the

previously discussed factors might dictate a different result.  *Forecast Sales v. Axxiom Mfg., Inc.*, No. 1:10-cv-01379-SEB-DML, 2011 WL 3206967, at \*5 (S.D. Ind. July 28, 2011).  This determination includes "such concerns as ensuring speedy trials, trying related litigation together, and having a judge who is familiar with the applicable law try the case."  *Heller Fin., Inc. v. Midwhey Powder Co.*, 883 F.2d 1286, 1293 (7th Cir. 1989) (citing *Coffey*, 796 F.2d at 221).  As there is no "related litigation" in this case, we focus on the relative speed with which each district resolves cases on its docket and the law applicable to the parties' claims.

Relevant to our analysis is a comparison of the dockets in this district and the Western District of Kentucky.  *See Nat'l Presto*, 347 F.3d at 664.  For the twelve-month period ending September 30, 2010, this district ranked 15th in the nation for the number of weighted filings per authorized judgeship (26th in unweighted); Western Kentucky ranked 45th (41st in unweighted).[11]  For that same time period, the median time to trial in a civil case in the Southern District of Indiana was 32.1 months; in the Western District of Kentucky, it was 30.7 months.  The median time from filing to disposition of a civil case was 9.8 months in this district compared to 8.2 months in the Western District of Kentucky.[12]  We find that these differences are not significant in terms of favoring one forum over the other, especially since transferring the case is likely to cause additional

---

[11]JAMES C. DUFF, JUDICIAL BUSINESS OF THE UNITED STATES COURTS: ANNUAL REPORT OF THE DIRECTOR 409-12 TBL.X-1A (2010), *available at* http://www.uscourts.gov/uscourts/Statistics/JudicialBusiness/2010/appendices/X1ASep10.pdf.

[12]*Federal Court Management Statistics*, U.S. COURTS, http://www.uscourts.gov/Statistics/FederalCourtManagementStatistics.aspx (last visited Aug. 30, 2011).

delay.  Moreover, in light of the fact that neither of the parties mentioned these data in their briefing, we are not persuaded that litigation of the action in Western Kentucky would be more in the interest of justice.

Next, we consider the claims at issue and the applicable law involved.  The Supreme Court has stated that it is in the interest of justice "to protect plaintiffs against the risk that transfer might be accompanied by a prejudicial change in applicable state laws." *Van Dusen*, 376 U.S. at 630.  In this case, such a result is unlikely.  Two of Wabash Valley's claims are for breach of contract, and the parties agree that there is currently insufficient information to determine whether the substantive law of Indiana or Kentucky will control.  Contract law is not so complex or unsettled that any uncertainty regarding its interpretation by this Court should be dispositive.  *See id.* at 645; *Amoco Oil Co. v. Mobil Oil Corp.*, 90 F. Supp. 2d 958, 962 (N.D. Ill. 2000); *Bodine's, Inc. v. Sunny-O, Inc.*, 494 F. Supp. 1279, 1286 (N.D. Ill. 1980).  Similarly, although the tort claims will be governed by Kentucky law,[13] we are confident that Kentucky tort law is within our comprehension.  Indeed, given the close proximity between Indiana and Kentucky, this court frequently is called upon to interpret and enforce Kentucky law.

Finally, we note that Hust Farms has failed to demonstrate that litigating this case in Kentucky is any more desirable as a matter of public policy.  We concede that it is for them certainly more desirable to resolve a controversy with a "home court advantage," but we agree that Indiana has a correspondingly strong interest in protecting the welfare

---

[13]Indiana courts apply the law of the state where the tort was committed.  *Simon v. United States*, 805 N.E.2d 798, 802 (Ind. 2004).

of its own limited liability companies.  Lacking clear evidence that litigating in Indiana

"is a burden that ought not to be imposed upon the people of [the] community," *Hunter*,

2008 WL 1957775, at *4 (quoting *Chi., R.I.*, 220 F.2d at 304 n.4), we find that the interest

of justice does not weigh in favor of transferring this case to the Western District of

Kentucky for final resolution.

## Conclusion

For the reasons detailed above, we find that this court is fully empowered to retain

jurisdiction over this action.  Thus, Defendants' Motion to Dismiss for Lack of Personal

Jurisdiction or for Improper Venue is DENIED.  We also find that the statutory factors

governing transfer of venue do not support a transfer to the Western District of Kentucky.

Accordingly,  Defendants' Motion to Transfer Venue is also DENIED.

IT IS SO ORDERED.


Date:   _____09/06/2011_____

SARAH EVANS BARKER, JUDGE
United States District Court
Southern District of Indiana

Copies to:


Meagan D Rideout
RHINE ERNEST LLP
mrideout@rhine-ernest.com

Reed S. Schmitt
RHINE ERNEST, LLP
rschmitt@rhine-ernest.com

Patrick A. Shoulders
ZIEMER STAYMAN WEITZEL & SHOULDERS
pshoulders@zsws.com

Keith W. Vonderahe
ZIEMER STAYMAN WEITZEL & SHOULDERS
kvonderahe@zsws.com